BARRY, Judge.
Hattie Dixon appeals a Civil Service Commission ruling which affirmed her dismissal as an account clerk with the New Orleans Dept, of Finance. We have no difficulty in concluding that Ms. Dixon’s behavior impaired the efficient and orderly operation of the public office where she was employed.
On April 10, 1981 Bobby Major, Comptroller of the Accounting Department, sent a letter to Erroll Williams, Director of Finance, recommending Ms. Dixon be termi *761 nated because of blatant insubordination. The letter reported Ms. Dixon had been instructed not to answer vendor inquiries, but despite numerous conferences, Ms. Dixon persisted in answering the inquiries and giving misinformation to taxpayers. On April 22, 1981, subsequent to a meeting with Ms. Dixon, Mr. Williams decided not to fire Ms. Dixon, but to transfer her to the Bureau of Treasury under John Hauler. An inter-office memo from Mr. Williams to Ms. Dixon stated:
As we discussed, I am in receipt of a substantial package of information in which there was an allegation made relative to your disregarding instructions by the supervisors and bureau chief with respect to the handling of vendor inquiries via telephone. After careful review of the facts, I am in agreement that your action was one of blatant insubordination.
However, after careful consideration of these facts, I think, and hope, that a change in environment would foster a change in attitude. Therefore, I am transferring you to the Bureau of Treasury as a second chance and if such action does recur in the new position with the Bureau of Treasury, then I will have no other alternative but to take stronger disciplinary action with respect to your employment with the City of New Orleans.
In September, 1981 Ms. Dixon received an “unsatisfactory” rating for December, 1980 to June, 1981. The evaluation was signed by Virginia Drake, her supervisor in Accounting, and Mr. Hauler. Attached to the rating was a memo to Mr. Williams which asserted:
[W]e both found that Hattie rejects direct instructions concerning her job and refuses to accept either constructive criticism or outright correction of whatever she does wrong. She simply refused to accept authority.
Ms. Dixon responded by filing a grievance form denying the accusations. On May 11, 1982, by certified mail, she was suspended by Mr. Williams for five days because of tardiness (33 times over an eight month period) and insubordination (insolence, disobedience and failure to follow direct instructions from her supervisor). The letter reiterated specific occurrences and reminded her she had been given a second chance by the transfer and had previously received an “unsatisfactory” service rating. The letter concluded:
I would encourage you, Ms. Dixon, to reflect on your current status and determine whether you will reverse this trend and become a valuable member of this department. We cannot and will no longer tolerate the type of attitude you have displayed in the Department of Finance. Any further actions of this nature will result in your immediate termination.
Ms. Dixon appealed this action. On July 8, 1982 she received a second “unsatisfactory” service rating by Mr. Hauler. This evaluation covered June, 1981 to July, 1982 and had the following comment:
“Hattie needs to learn to take directions. She needs to listen when people talk to her. She does not want to take instructions.”
On September 9, 1982 Mr. Williams sent Ms. Dixon a certified letter of termination which specified:
1. Your service rating for the period July 1, 1981 thru June 30, 1982 is “Unsatisfactory”. During this same period last year, your rating was “Unsatisfactory” for similar reasons. Instead of terminating you I thought that a change in environment would make a difference; I see that it did not.
2. You were suspended on May 12,1982 for insubordination and tardiness. You were also encouraged, at that time, to think about your status and determine whether you would reverse this trend and become a valuable member of this department. It is evident that you chose to remain as you were.
At the hearing Mr. Williams related an occasion when he waived interest on a tax bill and Ms. Dixon added the interest back. Mrs. Drake and Mr. Hauler testified that although Ms. Dixon was told many times to *762 cease taking vendor inquiries, she would acknowledge the instruction but then continue to answer taxpayer’s questions. Mr. Hauler reported that on several occasions while he attempted to instruct Ms. Dixon, she turned and walked away. Two coworkers, Edna Tapp (employed 6 years) and Helen McCoy (employed 15 years), related the same attitude. Both agreed she did not follow instructions, take corrections, or comply with office procedures because she wanted to do things her way. Mr. Hauler testified that he personally reviewed Ms. Dixon’s sign-in sheets and verified the numerous tardy days.
Ms. Dixon denied all of the allegations. However, it is clear from her testimony that she disregarded the 'explicit instructions of her supervisors. She even admitted being told by Paula Howard (her supervisor in Accounting prior to Virginia Drake) to stop handling vendor inquiries. She also said when alone she continued to respond to taxpayer’s questions. She stated she did not recall the “interest” incident reported by Mr. Williams. She also admitted disregarding Ms. Drake’s instructions to stop taking vendor inquiries. Regarding advice from co-workers she candidly stated: “I did not accept their advice on things that I already knew.” As to tardiness, she simply admitted being late on occasions, but did not realize it was so often.
Ms. Dixon called four co-workers who testified she was helpful and eager to learn. Mary Lambert worked for 4-5 months; Alfred Cortes was in Accounting for a year and a half; Patrice Sanders worked in Treasury for one month; and Thelma Jaeger was in a different city department and still working. Two taxpayers testified she was helpful and friendly and it was stipulated four additional taxpayers would testify similarly.
The efficiency of public service in the Finance Dept, is directly related to accurate responses to taxpayer inquiries. Ms. Dixon was not in a position to substitute her judgment for that of her supervisors. She refused to yield to authority. We find the evidence fully supports the disciplinary actions which were reasonable, not arbitrary; necessary, not capricious; and in the best interests of the appointing authority.
Ms. Dixon contends the Hearing Referee made prejudicial comments which affected the Commission. We disagree. The cases cited by appellant are all jury cases and inapplicable here. Under La. Constitution Art. 10 Section 12 the Commission is permitted to appoint a Referee, without decisional powers, to take testimony. The Commission’s opinion states: “A copy of the transcript and all documentary evidence have been reviewed by the three (3) undersigned members of the Civil Service Commission.” Even though the Referee did comment on the evidence, his conduct had no prejudicial effect on the Commission. See Goudeau v. Department of Public Safety, Division of State Police, 349 So.2d 887 (La.App. 1st Cir.) writ denied 351 So.2d 165 (1977); Boudreaux v. Chief Administrative Office, 436 So.2d 663 (La.App. 4th Cir.1983).
Ms. Dixon also complains that the document showing 33 tardy days is inadmissible hearsay because the original time sheets were not in evidence. Even without this evidence the City had sufficient cause to dismiss Ms. Dixon. However, Mr. Hauler testified he personally checked the time sheets and verified that the dates and times were accurate. This testimony was admissible and corroborated the correctness of the charge.
Ms. Dixon presents a litany of other claims:
The instruction not to communicate with vendors amounted to a demotion without due process. This contention doesn’t merit a response.
The C.A.O. neglected his duty by failing to complete the grievance procedure. The grievance form was filed into evidence and clearly shows it was processed through all appropriate steps.
She was prejudiced by delays in hearing this matter, but there is no such proof.
Finally, Ms. Dixon claims she was denied due process because the Commis *763 sion did not review her service ratings. She did not timely challenge the ratings because she had no notice of her right to appeal the ratings. Neither the Constitution nor the Civil Service rules provide for notice to the employee of the right to appeal a service rating. Perhaps Ms. Dixon is confused by the requirement that the appointing authority give notice to the employee of a right to appeal a disciplinary action. Rule IX Section 1.2 of the Civil Service Commission Rules. Picton v. Sewerage and Water Board, 423 So.2d 1284 (La.App. 4th Cir.1982) writ denied 430 So.2d 96 (1983). No notice was necessary as to a service rating and Ms. Dixon’s right to challenge the “unsatisfactory” service ratings had prescribed. Civil Service Rule XI, Section 1.4. See also Chadwick v. Department of Highways of the State, 238 La. 661, 116 So.2d 286 (1959).
Ms. Dixon was provided every conceivable opportunity to keep her job if she worked by the rules; unfortunately, she refused. We are satisfied the appointing authority demonstrated by a preponderance of the evidence that the conduct of Ms. Dixon impaired the efficient and orderly operation of the City’s Finance Dept.
The Civil Service Commission is affirmed.
AFFIRMED.